# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GORDON R. IRWIN, ET AL. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV145 |
| | § | (Judge Brown/Judge Bush) |
| COUNTRY COACH INC., ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendants Prevost Car (US) Inc. ("Prevost"), Country Coach Inc. ("Country Coach"), and Buddy Gregg Motor Homes, Inc.'s ("Buddy Gregg") respective motions to dismiss Plaintiffs' First Amended Complaint (Docket ## 32, 33, & 34). Having considered the motions, the responses, the replies, and the sur-replies, the Court finds as follows.

### Facts

On May 27, 2003, Plaintiffs, Gordon and Lorie Irwin, purchased a new 2004 Country Coach Prevost Motor home from the Buddy Gregg dealership in Lewisville, Texas for $1,123,758.82. The bus style chassis of the motor home was apparently manufactured by Prevost, and Country Coach finished it out and converted it into a luxury motor home. Plaintiffs assert that they purchased the motor home for business and pleasure.

In their Third Amended Complaint, Plaintiffs allege that Buddy Gregg representatives provided them with marketing materials and brochures which represented the motor home to be a high quality vehicle. The brochures, which Plaintiff alleges were produced by Prevost and Country Coach, stated that the line of coaches stand for "Ultimate lifestyle, comfort, safety and reliability" combined with "state-of-the-art design and manufacturing" and "the ultimate living experience." Furthermore, Brian Griffin, a salesperson for Buddy Gregg and agent for Country

Coach and Prevost represented to Plaintiffs that: (1) the motor home was "the Cadillac of motor homes and conversions;" (2) the motor home was "The Top of the Line;" (3) the "Crestron system was trouble-free and the same system installed in Lear Jets;" and (4) the motor home would be "trouble-free."

Plaintiffs purchased the motor home, and soon thereafter, took their first trip. They claim that they experienced numerous problems on the trip, including failure of the air conditioning system, failure of the Crestron electronics system, major dashboard electrical problems, faulty wiring, engine oil leaks, water leaks, wheel attachment issues, and a faulty transmission. Plaintiffs returned to Texas and delivered the motor home to Buddy Gregg so that the various malfunctions could be addressed. Plaintiffs were told that the problems were corrected, but they had to bring the motor home in one month later to address numerous malfunctions, many of which were supposed to have been previously repaired. Plaintiffs once again brought the motor home in the following month for repairs, and have had to return the motor home to the shop more than eight times since purchasing it. At the time Plaintiffs filed their Third Amended Complaint, the motor home was being repaired at a Buddy Gregg location in Florida. Plaintiffs claim that each time the motor home has been released to them, they have been assured that all of the defects were repaired.

Plaintiffs further allege that David Runyon of Country Coach and Prevost, whom they claim to be an agent of Buddy Gregg, has told them that their motor home was the fourth off of the production line and that the first four models were considered prototypes. Mr. Runyon stated that there were so many problems associated with the four prototype models that, for the motor home to function properly, it would be necessary to gut the entire motor home and rewire it. Mr.

Runyon further stated that all of the motor home's problems could not be adequately addressed without a complete overhaul.

Finally, Plaintiffs state that John Shiers, a Buddy Gregg employee, told them in November 2003 that the Crestron electrical system had never been used in any Prevost or Country Coach motor home before Plaintiffs' model and that all attempts by Buddy Gregg to repair the system had failed. Mr. Shiers further stated that to fix the Crestron system would require an overhaul of the software, but that doing so would cause additional electrical problems. Mr. Shiers told Plaintiffs that the Crestron system would never function the way it was designed to work with the motor home.

Plaintiffs originally filed their case in the 16th Judicial District of Denton County, Texas on March 16, 2005. The suit was subsequently removed to this Court on April 18, 2005. The parties attended a settlement conference before the undersigned on July 28, 2005 and arrived at a settlement. However, the settlement ultimately fell apart, and on October 31, 2005 Plaintiffs filed their First Amended Complaint alleging claims for: (1) Breach of Contract; (2) Violation of Lemon Law; (3) Fraud in Inducement to Contract; (4) Violation of the Texas Deceptive Trade Practices Act; (5) Breach of Express Warranty and Common Law Warranty; (6) Breach of Implied Warranty of Good and Workmanlike Performance in the Repair and Modification of Tangible Goods; (7) Breach of Warranty of Fitness for a Particular Purpose; (8) Breach of Implied Warranty of Merchantability; (9) Breach of Express Warranty for Goods; (10) Common Law Fraud; and (11) Attorney's Fees. All Defendants subsequently filed motions to dismiss the First Amended Complaint. Thereafter, Plaintiff filed a Second and Third Amended Complaint. Plaintiffs have dropped the first and fourth claims above listed claims, and therefore, to the extent

Defendants move for dismissal of Plaintiffs' breach of contract and DTPA claims, the Court finds that their motions should be denied as moot. The Court will now consider Defendants' motion to dismiss Plaintiffs' remaining claims.

## Standard

Prior decisions of both the United States Supreme Court and the Fifth Circuit Court of Appeals have made it clear that motions to dismiss for failure to state a claim upon which relief can be granted should not be granted lightly. For a complaint to be dismissed for failure to state a claim, it must appear "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [the]m to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Reeves v. City of Jackson, Mississippi*, 532 F.2d 491 (5th Cir. 1976).

Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying the plaintiffs an opportunity to develop facts to support their complaint. Moreover, sufficient procedures are available to defendants to seek summary disposition of a lawsuit after the plaintiffs have been afforded some opportunity to develop facts to support their complaint. *Reeves*, 532 F.2d at 494.

## Lemon Law

Defendants first move to dismiss Plaintiffs' claim for violation of the Texas Lemon Law, Tex. occ. Code § 2301.601, *et seq.* Defendants allege that Plaintiffs have failed to exhaust their administrative remedies prior to bringing suit. Section 2301.607 states that "A refund or replacement under this subchapter because a motor vehicle is alleged not to conform to an express warranty is not available to the owner of the vehicle unless the owner has exhausted the administrative remedies provided by this chapter." Tex. occ. Code § 2301.607 (Vernon 2003).

An agency has exclusive jurisdiction over the initial determination in a dispute when statutes or regulations indicate that the legislature intended the administrative process to be the exclusive means for addressing the relevant issue. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). When an agency has exclusive jurisdiction, a party must exhaust administrative remedies before bringing suit. *Id.* Whether an agency has exclusive jurisdiction is a question of law. *Id.* at 222.

The Court finds that the Texas legislature has clearly expressed its intention that the Texas Motor Vehicle Commission exercise exclusive original jurisdiction over Texas Lemon Law claims. Defendants contend, and Plaintiffs concede, that Plaintiffs have not exhausted administrative remedies. Although Plaintiffs argue that the Court has jurisdiction regardless of their failure to exhaust administrative remedies, they request, in the alternative, that the Court abate the present proceedings so that they may exhaust their administrative remedies. Defendants reply that abatement would be pointless, as the deadline for Plaintiffs to initiate their administrative proceeding expired on November 27, 2005.[1]

Plaintiffs cite Texas Civil Practice and Remedies Code § 16.064 for the proposition that, if this cause is abated, they may still timely institute administrative proceedings. Section 16.064 states:

> (a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:
>> (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or

---

[1] The Texas Lemon Law requires a consumer to bring a claim before the board "not later than six months after the earliest of: (1) the expiration date of the express warranty term; or (2) the dates on which 24 months or 24,000 miles have passed since the date of original delivery of the motor vehicle to an owner." TEX. OCC. CODE § 2301.606(d). Plaintiffs purchased the motor home on May 27, 2003 and the express warranty at issue was for a one-year period. Therefore, the latest date Plaintiffs could bring their Lemon Law claim before the board appears to be November 27, 2005.

>> annulled in a direct proceeding; and
>
>> (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.
>
> (b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

TEX. CIV. PRAC. & REM. CODE § 16.064 (Vernon 1997).  Plaintiffs have cited no authority to supporting their contention that § 16.064 is applicable to administrative proceedings.  In fact, the statute only states that it applies when, within 60 days, the action is filed in a "*court* of proper jurisdiction." *Id.* (emphasis added).  Although the Court has found no authority directly on point, the Court has found a number of cases stating that § 16.064 does not apply to special statutory and administrative proceedings.  *See Heart Hosp. IV, L.P. v. King*, 116 S.W.3d 831, 835-36 (Tex. App.–Austin 2003, pet. filed) ("Because section 16.064 is an exception to the general limitations provisions, it does not apply to proceedings created by statutes, such as statutory reviews of administrative decisions"); *Castillo v. Allied Insurance Co.*, 537 S.W.2d 486, 487 (Tex. App.–Amarillo 1976, writ ref'd n.r.e.) (barring Plaintiff from invoking precursor to § 16.064 when she failed to file suit within 20 days after ruling of Industrial Accident Board as required by Worker's Compensation Act); *Bear v. Donna Indep. Sch. Dist.*, 85 S.W.2d 797 (Tex. Civ. App.–San Antonio 1935, writ dism'd) (plaintiff could not invoke precursor to § 16.064 to allow filing of appeal to school board even though he filed administrative appeal withing 60 days of being dismissed from state court for lack of jurisdiction).  The Court finally notes that Texas Occupations Code § 2301.151 states: "The board has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction

to determine its own jurisdiction." As the board, rather than this Court, must determine whether it has jurisdiction to hear Plaintiffs' administrative action, the Court finds that Plaintiffs claim under the Texas Lemon Law should be dismissed without prejudice.

## **Warranty Disclaimers**

Defendants next argue that Plaintiffs' claims for breach of warranty should be dismissed. All express and implied warranties, Defendants argue, are negated by clauses in the warranty or retail order specifically excluding all express and implied warranties except for the limited warranty. Texas Business and Commerce Code Section 2.316 allows for the exclusion of implied warranties by stating:

> (b) Subject to Subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> (c) Notwithstanding Subsection (b)
>
>> (1) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>>
>> (2) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
>>
>> (3) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

TEX BUS. & COM. CODE ANN. § 2.316(b),(c).

While there is no doubt that Texas law allows for exclusion of implied warranties, Plaintiffs argue that Defendants did not properly exclude warranties in this case. Furthermore, Plaintiffs argue that, under Texas law, a disclaimer of warranty is an affirmative defense. *See Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 684 (Tex. App.–Dallas 2005, no pet.). Plaintiffs further argue that affirmative defenses do not justify dismissal under Rule 12(b)(6) and that they are not required to "plead around" affirmative defenses. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).

Defendants cite *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1979) for the proposition that when an affirmative defense appears on the pleadings and other documents properly considered on a 12(b)(6) motion, dismissal based upon such affirmative defense may be appropriate. *White*, however, only states that "a complaint is subject to dismissal under Rule 12(b)(6)...when the affirmative defense clearly appears on the face of the complaint." *Id. White*, unlike the present case, involved a statute of limitations defense which clearly appeared on the face of the complaint since the date of the alleged wrong was stated in the complaint. Defendants also cite *Bartley v. Nat'l Union Fire Ins. Co.*, 824 F. Supp. 624, 629 (N.D. Tex. 1992) for the contention that it is appropriate to examine a contract which forms the basis of a suit in ruling on a 12(b)(6) motion. However, *Bartley* cites *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676 (5th Cir. 1961) to support its statement that "The Fifth Circuit has held that dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper when the complaints, including the contracts upon which they rely, reveal on their face that the claimants are not entitled to the relief they seek." *Case* involved a case in which the contract was attached to the complaint, which supports the *Bartley* court's next statement that "other courts have held that where 'the plaintiff's cause of action arises out of a contract which has been

8

attached to the complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Bartley*, 824 F. Supp. at 629-30.

In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), also cited by Defendants, the Court approved consideration of documents attached not to the complaint, but to the motion to dismiss. The Court also noted, however, that the plaintiff in that case did not object to the court's consideration of such documents. *Id.* The Court did, however, approve of the practice adopted by other circuits of allowing consideration of documents attached to a motion to dismiss if they are referred to in the plaintiffs' complaint or central to their claim. *Id.*; *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). However, this Court notes the statement by the Supreme Court of Texas that "Implied warranties are created by operation of law and are grounded more in tort than in contract." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 352 (Tex. 1987). The Court therefore finds that the sales contracts and limited warranties attached to Defendants' motions to dismiss are not necessarily central to Plaintiffs' implied warranty claims.

In the present case, the Court finds that Defendants' affirmative defenses do not appear clearly on the face of the complaint. Plaintiffs are not required to plead around affirmative defenses. Furthermore, Plaintiffs did not attach the contracts or limited warranties at issue to their complaint. And while the disclaimers are central to Defendants' affirmative defenses, they are not necessarily central to Plaintiffs' warranty claims. Warranties may arise even in the absence of written contracts, and written contracts, even if they contain warranty disclaimers, are not central to a breach of warranty claim for dismissal purposes.

The Court acknowledges that the disclaimers, at first glance, would appear to defeat or

substantially limit Plaintiffs' breach of warranty claims, and Defendants may raise these issues on summary judgment. However, disclaimers are not always indefensible, and there are situations in which disclaimers will not serve their intended purpose. The Supreme Court of Texas has stated that "as is" disclaimers are not valid: (1) when the buyer is induced to make the purchase because of the seller's fraudulent representation or concealment; (2) if the buyer is entitled to inspect the good being sold, but is prevented from inspecting it by the seller; or (3) if the nature of the transaction and the totality of the circumstances surrounding the agreement indicate that the "as is" clause should not be enforced. *Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 895 S.W.2d 156, 162 (Tex. 1995). The Court finds that Plaintiffs should have the benefit of discovery before they should have to address whether Defendants' warranty disclaimers and "as is" clauses are enforceable.

**Limitation of Remedies**

The Plaintiffs argue that, even if the Court were to consider the warranty limitations, their warranty claims should not be dismissed because the limited *remedies* at issue have failed for their essential purpose. Plaintiffs have not clearly plead a claim for failure of limited remedies, but the Court finds that Plaintiffs have alleged sufficient facts to support their contention that the limited remedies at issue failed for their essential purpose. Texas Business and Commerce Code § 2.719(a) provides for the limitation of remedies, allowing sellers to limit remedies to repair, replacement, or refund. However, the section goes on to state that "Where circumstances cause an exclusive remedy to fail of its essential purpose, remedy may be had as provided in this title." TEX. BUS. & COM. CODE ANN. § 2.719(b). The Court finds that Plaintiffs have plead sufficient facts to establish that the limited remedies at issue failed of their essential purpose. *See Mercedes-Benz of N. Am. v. Dickenson.*, 720 S.W.2d 844, 854 (Tex. App.–Fort Worth 1986, no writ).

## Warranty of Good and Workmanlike Performance

Defendants likewise move for dismissal of Plaintiffs' claim for breach of the implied warranty of good and workmanlike performance. The Supreme Court of Texas has recognized an implied warranty to repair or modify existing goods in a good and workmanlike manner for consumers suing under the DTPA. *Melody Home*, 741 S.W.2d at 354. However, the Court notes that Plaintiffs are no longer bringing claims under the DTPA. The implied warranty of good and workmanlike performance is not available when other adequate remedies are available to a consumer. *See Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998) (declining to recognize implied warranty of good and workmanlike performance for services incidental to helicopter maintenance); *see also MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85 (Tex. App.–San Antonio 2000, no pet.) (finding no error for refusing to submit issue when court is unable to find any published case applying implied warranty to service and when plaintiff has other recourse against the defendant); *Codner v. Arellano*, 49 S.W.3d 666, 674 (Tex. App.–Austin 2001, no pet.) .

Plaintiffs are no longer pursuing a DTPA claim. Therefore, *Melody Home* no longer grants Plaintiffs a cause of action for breach of the implied warranty to repair and modify goods in a good and workmanlike manner. *Melody Home*, 741 S.W.2d at 354 ("We hold that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to consumers *suing under the DTPA*") (emphasis added). Furthermore, other remedies are, or at least were, available to Plaintiffs, including the Texas Lemon Law, Plaintiffs' claims for breach of express and implied warranties, and Plaintiffs' claim that the limited remedies failed of their essential purpose. The Court therefore finds that Plaintiffs' claim for breach of the implied

11

warranty to repair and modify goods in a good and workmanlike manner should be dismissed.

### **Fraud Claims**

Defendants next move to dismiss Plaintiffs' fraud claims. Defendants allege that Plaintiffs' fraud claims are not plead with particularity as required by Federal Rule of Civil Procedure 9(b) and that Plaintiffs have failed to plead the elements of a fraud claim, as the statements alleged by Plaintiffs to be fraudulent are mere puffery, opinion, or future predictions and cannot be considered.

Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to plead fraud with particularity, the Plaintiff must allege the "time, place, and contents of the representation, as well as the identity of the person making the misrepresentations, and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)(quoting *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). At the same time, Rule 9(b) is to be applied in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and Rule 8(e) which requires pleadings to be "simple, concise, and direct." FED. R. CIV. P. 8(a),(e); *Williams*, 112 F.3d at 178; *see also* Wright & Miller, 5 *Fed. Prac. & Proc. Civ.* 2d § 1298.

The statements alleged by Plaintiffs to have been fraudulent are as follows:

(1)  The brochures of Prevost and Country Coach state that the coaches stand for "*Ultimate lifestyle, comfort, safety and reliability*" combined with "*state-of-the-art design and manufacturing*" and "*the ultimate living experience*."

(2)  In April and May of 2003, Brian Griffin, the salesperson for Buddy Gregg and agent for Country Coach and Prevost represented to Plaintiffs that (I) the Motor home was "*the Cadillac of motor homes and conversions;*" (ii) *the*

> *Motor home was the "Top of the Line;"* (iii) the *"Crestron system was trouble-free and the same system installed in Lear Jets;"* and (iv) the Motor home would be *"trouble-free."*

As to the first set of statements, the Court finds that Plaintiffs have failed to plead fraud with sufficient particularity. While Plaintiffs have given specific statements excerpted from a sales brochure, they have not stated when or where the brochures were given to them. While, in the case of a brochure, the speaker can be assumed to be the author of the brochure(most likely the company issuing the brochure), and while the Court would not require Plaintiffs to allege when the brochures were published or who at the company actually wrote the text,[2] the Rules require Plaintiffs to provide specifics as to the time and place at which the information was provided to them. While the Court finds the particularity requirements regarding time, place, and person to be much more pertinent with regard to verbal statements, which are more difficult to prove or refute, the Court nonetheless finds that Plaintiffs have failed to plead fraud with sufficient particularity with regard to the brochures.

The Court further finds that the second set of statements alleged to have been fraudulent were not plead with sufficient particularity. Plaintiffs identify the speaker and the statements, but fail to allege when or where the statements were made. Plaintiffs' approximation that the statements were made in April and May of 2003 is not specific enough. Plaintiffs have not plead the time of the alleged misrepresentations with sufficient particularity. *See Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *1-2 (N.D. Tex. Nov. 15, 2004); *Skylon Corp. v. Guilford Mills, Inc.*, 1997 WL 88894, at *2 (S.D.N.Y Mar. 3, 1997) (alleging four month window in which fraudulent statements were made did not constitute pleading time with particularity). Furthermore,

---

[2] *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare*, 125 F.3d 899, 903 (5th Cir. 1997)(when facts relating to alleged fraud are particularly within perpetrator's knowledge, requirements of Rule 9(b) may be relaxed).

Plaintiffs have not alleged whether the statements were made at the dealership, over the phone, or on a test drive. Defendants are entitled to the particularity required by this Circuit and the Federal Rules of Civil Procedure. The Court therefore finds that Plaintiffs' fraud claims should be dismissed for Plaintiffs' failure to plead with particularity.

Defendants next allege that Plaintiffs have failed to plead the proper elements of their fraud claims. To establish their fraud claims, Plaintiffs must plead: (1) that Defendants made material misrepresentations; (2) which were false; (3) which were either known to be false when made or which were asserted without knowledge of their truth; (4) which were intended to be acted upon and were relied upon; and (5) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Defendants argue that Plaintiffs cannot prevail on their fraud claim because the statements at issue cannot be considered material misrepresentations, but are rather mere puffery, opinions, or future predictions. Puffery is an opinion of a seller not made as a representation of fact. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 729 (Tex. 1982). "A statement of opinion with regard to future events can constitute fraud only if the speaker knows that it is false, and purports to have special knowledge of future events." *In re Absolute Resource Corp.*, 76 F. Supp. 2d 723, 729 (N.D. Tex. 1999). Statements comparing one product to another and claiming superiority are not actionable misrepresentations. *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 464 (Tex. App.–Dallas 1990, writ denied).

In *Autohaus*, the Court found that the following statements were not actionable as misrepresentations: (1) that a car was the best car in the world; (2) that the car would probably not have mechanical difficulties; and (3) that the car would probably only need servicing for oil changes. *Id.* at 464-65; *see also Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 163

(Tex. 1995)(statements that building was "superb," "superfine," and "one of the finest little properties in the City of Austin" were mere puffing or opinion and not misrepresentations of material fact). The Court finds, based upon the relevant authority, that all but one of the statements alleged by Plaintiffs to be fraudulent are mere puffing, opinion or future predictions. These statements are not actionable misrepresentations and the Court finds that Plaintiffs' fraud claims should be dismissed with prejudice as to those statements. The Court finds, however that Brian Griffin's statement that the Creston System was the same system installed in Lear Jets, if false as alleged, gives Plaintiffs grounds for an actionable fraud claim. The Court will therefore not dismiss Plaintiffs' fraud claim as to that statement with prejudice, but will recommend dismissal without prejudice since, as noted above, Plaintiffs have failed to plead any of their fraud claims with sufficient particularity.

**RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendants' Motions to Dismiss be GRANTED, in part and DENIED, in part. The Court recommends that Plaintiffs' claims for violation of the Texas Lemon Law be DISMISSED WITHOUT PREJUDICE. The Court further recommends that Plaintiffs' claim for breach of the implied warranty of good and workmanlike conduct be DISMISSED WITH PREJUDICE. The Court finally recommends that Plaintiffs' fraud claims be DISMISSED WITH PREJUDICE, with the exception of Plaintiffs' fraud claim regarding the statement of Brian Griffin that the Crestron System was the same system installed in Lear Jets, which the Court recommends be DISMISSED WITHOUT PREJUDICE.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and

file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of February, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE